UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HARRY CAMP,

                Plaintiff,                Case No. 1:12-cv-306

v.                                  Honorable Paul L. Maloney

UNKNOWN PARTY et al.,

                Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Harry Camp is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF), where he is serving life sentences for armed robbery and first-degree murder.[1]  His claims in this action arise from an incident in which state officials forced him to provide a DNA sample pursuant to a search warrant issued by a judge/magistrate of the 60th District Court of Muskegon, Michigan.  He sues the judge/magistrate who signed the search warrant ("Unknown Party"), Muskegon County Prosecutor Tony Tague, unidentified Michigan State Police Officers involved in the collection of the sample, and Detective Curtis R. Schram of the Michigan State Police.  He also sues the following employees of LRF: Warden Mary Berghuis, Assistant Deputy Warden (ADW) S. Walton, Inspector B. Evans, Classification Director D. Johnson, Grievance Coordinator J. Minnerick, Hearing Investigator G. Mclallan, Lieutenant (unknown) Thorne, Special Activities Director (unknown) Curr, Sergeant (unknown) Crage, Officer (unknown) Hargett, Inspector (unknown) Polsin, and Lieutenant (unknown) Plichta.

According to the complaint, on March 30, 2011, Plaintiff was taken to a "gym-room" at "school," where he was told by ADW Walton and Inspector Evans that he must provide a DNA specimen pursuant to a search warrant.  (Compl., docket #1, Page ID#6.)  If Plaintiff did not agree to provide a sample, it would be taken from him by force.  Plaintiff did not want to provide a sample, so he attempted to leave.  When Plaintiff arrived at the outer doors of the school, Defendant Curr asked him where he was going.  Officers Thorne and Plichta then escorted Plaintiff into the school

---

[1] Information regarding Plaintiff's convictions was obtained from his profile on the MDOC Offender Tracking Information System, available at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=244593 (accessed April 16, 2012).

hallway where ADW Walton and Inspector Evans asked Plaintiff to provide a DNA swab.  Plaintiff refused.  Walton and Evans told Plaintiff that he would be handcuffed and taken to segregation. Plaintiff said "that is fine" and put his hands behind his back.  (*Id*.)  Plaintiff was then handcuffed and taken to another room in the school where he was asked "if this was going to be done the easy way or the hard way!"  (*Id.*)  Plaintiff told the officers that they did not have a right to take his DNA without his consent.  One of the officers then removed Plaintiff's glasses as Officer Hargett and two others pushed Plaintiff down onto a table.  Two additional officers held Plaintiff's legs.  One of the officers with the Michigan State Police pushed a cotton swab into Plaintiff's mouth, but Plaintiff "bit down on the swab to prevent the [ex]traction of the DNA."  (*Id.*)  An officer then "slammed" Plaintiff's head "off the table," forcing him to release the cotton swab.  (*Id.* at Page ID#7.)

Another swab was needed to collect a DNA sample, so officers put another swab into Plaintiff's mouth.  After Plaintiff bit down on the second swab, Officer Hargett "started bending [Plaintiff's] wrist until he released the second cotton swab."  (*Id.*)  Officers then attempted to take a thumbprint from Plaintiff, but he "tried to prevent this procedure also."  (*Id.*)  Officer Hargett and others holding Plaintiff proceeded to bend Plaintiff's wrists "so hard that all [Plaintiff] could do is comply with the prints being taken[.]"  (*Id.*)  After the samples and prints were obtained, Plaintiff requested to see someone in the health care unit regarding his wrists.  Plaintiff was given a wrist brace that he had to wear for two months.  He asserts that he is still having pain and "major trouble" with his wrists.  (*Id.* at Page ID#7.)

Plaintiff later received a copy of a warrant for the collection of the DNA sample, but he did not see his name on the warrant.  A list of names was attached to the warrant, but Plaintiff was not permitted to see the list because it included the names of other prisoners.  Plaintiff alleges

that the warrant was requested by Prosecutor Tague, it was signed by an unknown judge/magistrate for the 60th District Court, and it was issued to Detective Schram of the Michigan State Police.

Plaintiff claims that Defendants' conduct constituted an illegal search in violation of the Fourth Amendment and cruel and unusual punishment in violation of the Eighth Amendment. He also contends that Defendants violated his right to due process under the Fourteenth Amendment.[2]  Plaintiff does not indicate what form of relief he seeks.

**Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at

---

[2]Plaintiff erroneously refers to the Twelfth Amendment as the source of his right to due process  (Compl., Page ID#5); however, the Court liberally construes the complaint to assert a due-process claim under the Fourteenth Amendment.

1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Fourth Amendment

Plaintiff contends that Defendants required him to submit to collection of his DNA in violation of his Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Sixth Circuit has examined the reasonableness of suspicionless prisoner searches, including searches involving the extraction of a DNA sample, under a "totality of the circumstances" test. *Wilson v. Collins*, 517 F.3d 421, 427 (6th Cir. 2008). That test requires "'assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 425 (quoting *Samson v. California*, 547 U.S. 843, 848 (2006) (permitting suspicionless searches of parolees)).

- 5 -

In *Wilson*, the plaintiff raised a Fourth Amendment challenge to an Ohio law requiring convicted felons to provide DNA samples to prison officials for inclusion in state and national DNA index systems. *See* 517 F.3d at 423-24. The court noted that challenges to similar laws in other states "have been uniformly rejected by the courts, as the government's compelling interests in crime control have consistently been deemed to outweigh the plaintiffs' diminished privacy interests." *Id.* at 424-25 (citing cases). According to *Wilson*, the Ohio statute did not violate the Fourth Amendment because, considering the minimal intrusion implicated by swabbing saliva, the government's compelling interest in collecting the DNA sample outweighed the plaintiff's "greatly diminished privacy interests as a convicted felon." *Id.* at 427-28; *see also United States v. Conley*, 517 F.3d 421, 680-81 (6th Cir. 2008) (holding that the collection of a DNA sample from a convicted felon on supervised release does not violate the Fourth Amendment). The circumstances in Plaintiff's case are not meaningfully distinguishable from those in *Wilson*. The fact that Plaintiff challenges a search conducted pursuant to a warrant rather than a search authorized by state law is irrelevant because, under *Wilson,* even a suspicionless search is reasonable.[3] In other words, considering the minimal intrusion associated with swabbing Plaintiff's saliva, Defendants' interest in the use of DNA samples to facilitate crime control substantially outweighs Plaintiff's diminished privacy interests as a convicted felon. Therefore, Plaintiff does not state a Fourth Amendment claim.

---

[3]Moreover, like Ohio, Michigan also requires persons who have been convicted of felonies, including first-degree murder and armed robbery, to provide DNA specimens to government authorities. *See* Mich. Comp. Laws § 750.520m; Mich. Comp. Laws § 791.236(19). The warrant in Plaintiff's case may have been the means for the Michigan State Police to obtain the specimens from unwilling prisoners. *See* Heather Lynn Peters & John S. Hausman, *Muskegon prison inmates forced to give DNA in state police sweep authorized by Tony Tague*, The Muskegon Chronicle (Mar. 31, 2011), http://www.mlive.com/news/muskegon/index.ssf/2011/03/muskegon_prison_imates_forced.html. In July 2011, a few months after Plaintiff's sample was taken, the Michigan legislature passed a law authorizing MDOC officials to obtain DNA samples from all prisoners, by force if necessary. *See* Mich. Comp. Laws § 791.233d.

B.       **Eighth Amendment**

Plaintiff also asserts that Defendants' actions while forcing him to provide a DNA sample and fingerprints constituted excessive force in violation of his rights under the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. at 347. For claims involving the use of force against prisoners, courts must accord deference to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). "[W]henever guards use force to keep order," the standards enunciated in *Whitley* should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v.*

- 7 -

*Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

The need for the use of force in Plaintiff's case is clearly evident from the pleadings because Plaintiff repeatedly attempted to prevent Defendants from conducting a lawful, minimally-invasive procedure. After Plaintiff was told that he would be required to provide a DNA sample, he attempted to leave. Plaintiff was then warned by officials that they would take the sample the "easy" way or the "hard" way, but he refused to comply. (Compl., Page ID#6.) Then, after officers put cotton swabs in Plaintiff's mouth, Plaintiff bit down on the swabs to prevent the officers from obtaining them. Finally, when officers attempted to obtain his fingerprints, he resisted. Thus, Plaintiff's refusal to comply necessitated the use of some force; had Plaintiff complied, no amount of force would have been necessary.

Furthermore, the allegations indicate that the amount of force used was proportional to its purpose. Officers applied force when necessary to obtain Plaintiff's compliance, and the force apparently ceased when compliance was obtained. When Plaintiff bit down on the first cotton swab, an officer made him release it by forcing his head "off" the table. (Compl., Page ID#7.) When Plaintiff bit down on the second swab, Officer Hargett bent Plaintiff's wrist "until" Plaintiff released the swab. (*Id.*) Finally, when officers attempted to obtain a fingerprint, they bent his wrist "so hard that all [Plaintiff] could do is comply with the prints being taken[.]" (*Id.*) Thus, the allegations indicate that Defendants applied force in a good faith effort to secure Plaintiff's compliance with a lawful procedure; there is no absolutely indication that Defendants applied force "maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 7. Therefore, Plaintiff does not state an excessive-force claim under the Eighth Amendment.

- 8 -

## C.     Due Process

Plaintiff also contends that forcing him to submit to collection of a DNA specimen violated his right to due process under the Fourteenth Amendment.  The court in *Wilson* considered and rejected both a substantive due process claim and a procedural due process claim.  As in *Wilson*, Plaintiff's substantive due process claim must fail because there is a "more explicit source of constitutional protection" for this claim.  *See Wilson*,  527 F.3d at 428.  According to *Graham v. Connor*, 490 U.S. 386 (1989), a claim regarding the use of excessive force or an allegedly unreasonable search and seizure should be "judged by reference to the specific constitutional standard which governs that right," and not the "more generalized notion of 'substantive due process.'"  *Id.* at 394-95.  Thus, Plaintiff's claims regarding the forcible collection of his DNA must be analyzed under the Fourth and/or Eighth Amendments; he may not proceed with an independent claim of violation of his right to substantive due process.  *Cf. Wilson*, 517 F.3d at 428 (holding that the plaintiff's substantive due process claim should be analyzed, in part, under the Fourth Amendment).[4]

To the extent Plaintiff asserts a procedural due process claim, he does not explicitly identify the liberty or property interest that he claims is protected by due process.  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  In *Williams v. Dep't of Rehab. & Corr.*, 3 F. App'x 415 (6th Cir. 2001), the Sixth Circuit held that the taking of a blood sample from a prisoner

___

[4]The court in *Wilson* separately analyzed a substantive due process claim based on the privacy interest implicated by the indefinite retention of the information in the plaintiff's DNA profile, 517 F.3d at 428-30.  In the instant case, however, Plaintiff makes no allegations about the retention of his information.

for the purpose of collecting DNA is a *de minimis* taking of property not entitled to extensive due process protections. *Id.* at 417; *see also United States v. Bean*, 214 F. App'x 568, 571-72 (6th Cir. 2007) (citing *Williams* and noting that due process challenges to a federal DNA collection statute "have been consistently rejected by the courts"). The saliva sample taken from Plaintiff is surely more *de minimis* than a blood sample.

Plaintiff also does not identify the procedure that he believes he should have received. In contrast, the plaintiff in *Wilson* contended that he was entitled to a pre-deprivation hearing before the collection and disclosure of his DNA in a national database in order to protect his right to privacy. The Sixth Circuit found no error in the district court's rejection of this claim because:

> due process is a flexible concept and . . . since [the plaintiff] had diminished privacy interests as a prisoner, the degree of intrusion was minimal, and the risk of erroneous deprivation was slight, no predeprivation hearing was required.

*Wilson*, 517 F.3d at 430. The court also noted that the plaintiff "failed to identify what purpose would be served by a pre-deprivation hearing or other process," and failed "to identify a single decision by any court that recognizes a prisoner's procedural due process right to a hearing before collection of a DNA sample . . . ." *Id.* Likewise, Plaintiff, a convicted felon, has diminished privacy interests, he was subject to a minimal intrusion, and the risk of erroneous deprivation was slight. Moreover, as in *Wilson*, the Court cannot discern a purpose that would be served by pre-deprivation process. Thus, Plaintiff does not state a procedural due process claim. Therefore, Plaintiff's due process claim must be dismissed.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Date:   April 30, 2012                                    /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          Chief United States District Judge


- 12 -